UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RICARDO BUSBEE, *et al.*,

    Defendants.

Case No. 3:23-cr-116

District Judge Michael J. Newman

---

**ORDER: (1) GRANTING DEFENDANT RICARDO BUSBEE'S MOTION TO ADOPT CO-DEFENDANTS' MOTIONS (Doc. No. 80); (2) DENYING DEFENDANTS' INDIVIDUAL MOTIONS TO SUPPRESS (Doc. Nos. 75, 77, 79, 85); (3) CONFIRMING THE PREVIOUSLY TOLLED TIME—FROM JUNE 17, 2025 UNTIL JANUARY 20, 2026—REMAINS EXCLUDED FROM THE SPEEDY TRIAL ACT CALCULATION (Doc. No. 149); (4) CONFIRMING THE PARTIES' JOINT STATUS REPORT IS DUE BY NOVEMBER 3, 2025 (Doc. No. 149); (5) CONFIRMING THIS CASE IS SET FOR A FINAL PRETRIAL CONFERENCE ON JANUARY 6, 2026 AT 2:00 P.M. (Doc. No. 149); AND (6) CONFIRMING TRIAL IS SET FOR JANUARY 20, 2026 AT 9:30 A.M.**

---

The Government brings this felony criminal case asserting that Defendants were involved in a drug trafficking organization in and around Dayton, Ohio, resulting in the death of one individual, L.S., and serious bodily injury to another, D.S. Doc. No. 8 at PageID 14. In a multi-count indictment, Defendants have been charged, in part, with one count of conspiracy to possess with intent to distribute cocaine, methamphetamine, and fentanyl. *Id*.

Before the Court are Defendants Torrence Busbee's ("T. Busbee"), Doretha Hughes's, and Dalaquan McGuire's individual motions to suppress evidence (Doc. Nos. 75, 77, 85); Defendant Ricardo Busbee's ("R. Busbee") motion to suppress evidence and statements (Doc. No. 79); the Government's omnibus memorandum in opposition (Doc. No. 100); T. Busbee's and Hughes's Replies (Doc. Nos. 103, 104); the Government's supplemental memorandum (Doc. No. 116);

Hughes's supplemental memorandum in support of her motion to suppress (Doc. No. 143); and the Government's response (Doc. No. 150).

The Court held a hearing on March 21, 2025 during which the Court heard oral argument and admitted into evidence Hughes's Exhibits 1 through 4 and the Government's Exhibits 1 through 7. The Court thereafter granted the Government and Hughes's joint motion to bifurcate the hearing on her motion to suppress regarding her challenges to the photographic lineup. Doc. No. 131. On June 2, 2025, the Court held a suppression hearing on Hughes's challenges to the photographic lineup. Doc. No. 77. During that second suppression hearing, the Court admitted the photographic lineup into evidence ("Gov't Hearing Exh. 1"). Doc. No. 145 at PageID 1208-09, 1238-39. The Court thereafter granted an unopposed request by Hughes's counsel for additional time to submit briefing. Doc. No. 142. Hughes's counsel has since filed a supplemental memorandum and a supporting exhibit (Doc. No. 143, 147), and the Government has filed a response (Doc. No. 150).

In addition to the above motions, R. Busbee filed a motion to adopt T. Busbee's and Hughes's motions to suppress.[1] Doc. No. 80. For good cause shown, and in the absence of prejudice to the Government, R. Busbee's motion to adopt is **GRANTED**.

## I. Legal Standards

The Court has previously set forth the legal standards for resolving a motion to suppress and incorporates those standards herein. *See United States v. Piner*, No. 3:21-CR-89, 2022 WL 622133, at ** 2–3 (S.D. Ohio Mar. 3, 2022). It suffices to briefly say the Fourth Amendment forbids "unreasonable searches and seizures" and provides, "no Warrants shall issue, but upon

---

[1] The text on the docket that describes R. Busbee's motion to adopt indicates he seeks to adopt each Defendant's motion to suppress. *See* Doc. No. 80 (docket text). However, the substance of R. Busbee's motion seeks to adopt only T. Busbee's and Hughes's motions to suppress. *Id*. at PageID 219-20.

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. art. IV. "[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). Fourth Amendment analysis considers the information in the search-warrant "affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *Id.* (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)).

"Great deference" extends to the issuing judge's probable cause determination. *Id.*; *accord United States v. Christian*, 925 F.3d 305, 311-12 (6th Cir. 2019) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (The district court must employ "great deference" when considering the issuing judge's probable cause determination and should "overturn that decision only if the [issuing judge] arbitrarily exercised [the judge's] authority")).

## II. Analysis

### A. Standing[2]

The Government first contends that R. Busbee, Hughes, McGuire, and T. Busbee each lack standing necessary to challenge the search warrants for the property and cellphones at issue in their motions to suppress. Doc. No. 100 at PageID 296-97.

---

[2] Use of the term "standing" in the context of Fourth Amendment searches is somewhat off target. "In determining whether a defendant is able to show the violation of his [or her] (and not someone else's) Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *United States v. Pollard*, 215 F.3d 643, 646-47 (6th Cir. 2000) (citation modified). Still, its use persists: "The concept of standing in Fourth Amendment cases is a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits." *Byrd v. United States*, 584 U.S. 395, 410-11 (2018) (citing *Ariz. Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 129 (2011) ("To obtain a determination on the merits in federal court, parties seeking relief must show that they have standing under Article III of the Constitution")).

3

"The defendant has the burden of establishing the standing necessary to assert a Fourth Amendment violation." *United States v. Ponder*, 240 Fed. App'x 17, 19 (6th Cir. 2007); *see United States v. Russell*, 26 F.4th 371, 375 (6th Cir. 2022). "Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim."[3] *Byrd v. United States*, 584 U.S. 395, 411 (2018). Given this, the Court declines in the instant case to presently address the Government's standing arguments and, instead, turns to the merits of each Defendant's motion to suppress.

### B. T. Busbee's Motion to Suppress

T. Busbee contends that probable cause did not support either the search warrant issued for the contents of his cell phone with the number (937) 716-0118 (Doc. No. 103 at PageID 659) or the search warrant issued for 144 Kelly Avenue ("144 Kelly Avenue"). Consequently, according to T. Busbee, the searches of his cell phone and the 144 Kelly Avenue address violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Doc. No. 75. Additionally, T. Busbee seeks suppression of any and all of his statements allegedly taken in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments and *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id*.

The Court has carefully and thoroughly reviewed the parties' motions and memoranda, including DEA Task Force Officer Gregory A. Orick's affidavits and the resulting search warrants. Most significantly, Orick submitted an affidavit in support of the search warrant application for 144 Kelly Avenue and in support of the search warrant application for electronic devices, which included the cellphone with T. Busbee's number (937) 716-0118. Doc. No. 100, Exhs. 5, 7. The

---

[3] *See supra* note 2.

Court finds that the information contained in these affidavits sets forth ample indicia of probable cause, *see id*., Exh. 5 at PageID 975-1024; Exh. 7 at PageID 1092-1165; are sufficiently particular as to the property to be searched at 144 Kelly Avenue and T. Busbee's cell phone and its contents to be searched; demonstrate the required "probable cause nexus," *United States v. Sanders*, 106 F.4th 455, 460-61 (6th Cir. 2024) (*en banc*), and are neither vague nor conclusory. *See Sanders*, 106 F.4th at 462 (citing *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (Noting "probable cause is not a 'high bar'")). Moreover, even if the Court were to find the warrants lacking—which it does not— the officers executing the warrants relied in good faith on the search warrants and, consequently, the good-faith exception applies and supports the denial of T. Busbee's motion to suppress. *See United States v. Leon*, 468 U.S. 897, 922-24 (1984); *cf. United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018) ("[T]he affidavit offers several factual allegations that, even if insufficient in isolation and circumstantial in nature, render the officer's reliance on the warrant objectively reasonable").

As to T. Busbee's motion to suppress his statements made in violation of the Fifth, Sixth, and Fourteenth Amendments and *Miranda*, 384 U.S. 436, his motion fails because he does not identify any particular statement he made to a law enforcement officer, and he does not otherwise allege facts indicating officers violated his rights under the Fifth, Sixth, or Fourteenth Amendment or *Miranda*. *See* Doc. No. 75 at PageID 200-01; Doc. No. 103 at PageID 660. In addition, the Government states that to its "knowledge, none of the defendants were ever interviewed." Doc. No. 100 at PageID 332. Assuming this is true, T. Busbee has not shown he made a statement covered by *Miranda* or a statement that is potentially eligible for suppression under the Fifth, Sixth, or Fourteenth Amendments.

Accordingly, T. Busbee's motion to suppress is **DENIED**.

### C. Hughes's Motion to Suppress

Hughes seeks an Order to suppress (1) evidence seized or viewed during the searches at 130 Laura Avenue and 127 Rockwood Avenue, including any cell phones taken from or near her, because, she contends, probable cause does not support the search warrants issued for these locations and cellphones; (2) the positive identification of her in a photographic lineup because the lineup was impermissibly suggestive in violation of the Fourth, Fifth, and Sixth Amendments; and (3) any of her statements taken in violation of her constitutional rights. Doc. No. 77 at PageID 206-11; Doc. No. 104 at PageID 664.

### 1. The Search Warrants

Hughes maintains that the search warrant affidavits did not identify the confidential informant, describe his or her criminal histories and/or indicate they ever provided independently corroborated information. Doc. No. 77 at PageID 210. Hughes further asserts, "there is support that the confidential source may not be honest, unbiased, and/or acting on their own agenda as they were receiving payment from law enforcement." *Id*.

The Court has carefully and thoroughly reviewed the parties' motions and memoranda, the affidavits submitted by Task Force Officer Orick—specifically, the affidavits he provided in support of the warrant applications to search 130 Laura Avenue and 127 Rockwood Avenue, and the affidavit in support of the search warrant application for electronic devices, including cellphones found on or near Hughes. The Court finds that the information contained in these affidavits set forth ample indicia of probable cause, *see* Doc. No. 100, Exh. 1 at PageID 856-873; Exh. 6 at PageID 1032-84; Exh. 7 at PageID 1092-1166, are sufficiently particular as to the property to be searched at each address; demonstrate the required "probable cause nexus," *see Sanders*, 106 F.4th at 460-61, and are neither vague nor conclusory. *See Sanders*, 106 F.4th at 462

(citing *Wesby*, 583 U.S. at 57 (Noting "probable cause is not a 'high bar'")). Moreover, even if the Court were to find the warrants lacking—which it does not—the officers executing the warrants relied in good faith on the search warrants at issue and, consequently, the good-faith exception applies and supports the denial of Hughes's motion to suppress. *See Leon*, 468 U.S. at 922-24; *cf. Merriweather*, 728 F. App'x at 506 ("[T]he affidavit offers several factual allegations that, even if insufficient in isolation and circumstantial in nature, render the officer's reliance on the warrant objectively reasonable").

## 2.
## The Photographic Lineup[4]

Hughes acknowledges that she has been charged, in part, with "distribution of controlled substances resulting in death to L.S. and serious bodily injury to D.L." Doc. No. 143 at PageID 1186; *see* Doc. No. 8. Hughes also acknowledges, "L.S. died on approximately July 27, 2023 and D.L. was seriously injured on or about the same date. Doc. No. 143 at PageID 1186.

Hughes contends, "The suggestiveness of the original procedure was not otherwise reliable based on the totality of the circumstances surrounding the original descriptions, opportunities to view the perpetrator, and changing stories in the thirteen days after July 27, 2023." *Id*. at 1190.

During the June 2nd evidentiary hearing regarding the photographic lineup Hughes challenges, Lieutenant Matthew Beavers of the Dayton Police Department testified that he was the "blind administrator" of the photo array compiled in connection with the investigation of a series of drug overdoses in Dayton. Doc. No. 145 at PageID 1206-07. As the blind administrator,

---

[4] Although the Government states it will not seek to use Hughes's photo lineup identification at trial (Doc. No. 100 at PageID 335-36, the Government acknowledges this does not moot Hughes's motion to suppress (Doc. No. 116 at PageID 686). In addition to her photo lineup identification, Hughes seeks an Order suppressing any post-array identification of her, including an in-court identification, as fruit of the poisonous tree—*i.e.*, fruit of her identification obtained from the allegedly unconstitutional photo array. *See* Doc. No. 104 at PageID 665-66 (citing *United States v. Wong Sun*, 371 U.S. 471 (1962)); *see also* Doc. No. 116 at PageID 686.

7

Lieutenant Beavers did not know any details of the investigation and did not know any information about the suspects. *Id*. at PageID 1207. He explained that the person who creates the photo array is typically either the case detective or another detective, not the blind administrator. *Id*. at PageID 1205. This keeps the photo array "as blind as possible." *Id*.

Lieutenant Beavers recalls that Detective Howard, with the Dayton Police Department's Narcotics Bureau, created the photo array at issue. *Id*. at PageID 1209; *see* Exhibit 1. The photo array contained a total of six photos arranged in two rows, each row containing three photos. *See* Gov't Hearing Exh. 1. To administer the photo array, Lieutenant Beavers and Officer Orick went D.L.'s residence on August 22, 2023.[5] *Id*. at PageID 1209-10. After they entered the residence, Orick gave the photo array to Lieutenant Beavers in a manilla envelope. Doc. No. 145 at PageID 1209-11. Lieutenant Beavers and D.L. went to the kitchen area where he administered the photo array by reading certain written instructions and showing the photo array to D.L.[6] *Id*. at PageID 1212-13; *see* Gov't Exh. 1. No one else was present in the kitchen when this occurred. *Id*. During the time it took Lieutenant Beavers to read the instructions—approximately sixty-five to ninety-five seconds—D.L. had the opportunity to examine all six photos in the array. "Just a few seconds" after Lieutenant Beavers finished reading, D.L. selected photograph number six by tapping it and saying, "*that's* her." Doc. No. 145 at PageID 1216. Lieutenant Beavers gave D.L. a red pen and

---

[5] During his testimony, Lieutenant Beavers did not identify D.L. as the witness because he had not met her before administering the photo array. Doc. No. 145 at PageID 1212-13. However, there is no dispute D.L. was the witness to whom Lieutenant Beavers showed the photo array. Doc. No. 143 at PageID 1187-90.

[6] The written instructions explain, "I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. I do not␣who the suspect is. Keep in mind that hair styles, beards and moustaches may be easily changed. Also, photographs may not always depict the true complexion of a person; it may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any differences in the type or style of the photographs. When you have looked at all of the photos, tell me whether or not you see the person who committed the crime or any other person you recognize. Do not tell other witnesses that you have or have not identified anyone." Gov't Hearing Exh. 1.

8

told her to "circle whatever picture you have identified." *Id*. D.L. circled photograph number 6, Hughes's photo. *Id*. at PageID 1216-17; *see* Gov't Hearing Exhibit 1. Later, after Lieutenant Beavers returned the photo array to Detective Orick, Orick wrote Hughes's name at the bottom of the photo array in the line designated for the suspect's name. Doc. No. 145 at PageID 1216-17; *see* Gov't Hearing Exhibit 1. Hughes's name did not appear on the photo array when D.L. reviewed it. Doc. No. 145 at PageID 1217.

Hughes maintains that the procedures used to administer the photo array, and the photo array itself, are suggestive and unreliable for many reasons: D.L. did not indicate she saw the alleged perpetrator until 13 days after suffering an apparent drug overdose (on July 27, 2023), *id*. at PageID 1189; D.L. initially identified the location of the perpetrator who sold the narcotics to her and the decedent—"off of Main Street, on Shadyside[,]" *id*.—but, 13 days later, changed the location to "130 Laura[,]" *id*.; D.L. initially identified the perpetrator as male but, 13 days later, identified the perpetrator as female; D.L. initially reported lacking the opportunity to observe the perpetrator but, 13 days later, reported possibly observing the perpetrator for one or two minutes; the photos used in the array were handpicked to show Hughes as the only person in the lineup with traits matching those described by D.L.; and the lineup was administered nearly a month (on August 22, 2023) after D.L.'s memory was influenced by many factors. Doc. No. 143 at PageID 1189-90.

"The Due Process Clause of the Fourteenth Amendment 'requires suppression of an eyewitness identification' if the identification process was 'unnecessarily suggestive' and the identification itself was unreliable." *United States v. Whited*, No. 24-5253, 2025 WL 405103, at *7 (6th Cir. Feb. 5, 2025) (quoting *Sexton v. Beaudreaux*, 585 U.S. 961, 965–66 (2018) (per curiam)). A two-step inquiry controls: "First…, whether law enforcement officers used an

9

identification procedure that is both suggestive and unnecessary. If so…, [second, the Court asks if] the evidence was nevertheless reliable." *United States v. Radaker-Carter*, --- 4th ---, 2025 WL 2399352, at *4 (6th Cir. Aug. 19, 2025) (citation modified).

"Exclusion is a strong remedy reserved only for cases 'where the indicators of a witness' ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion." *Id*. (citation modified) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012)). "Trial rights instead are the primary safeguards by which 'the Constitution ... protects a defendant against a conviction based on evidence of questionable reliability.'" *Id*. (quoting *Perry*, 565 U.S. at 237).

Lieutenant Beavers' testimony about the procedures employed to compile the photo array and present it to D.L.—especially his role and conduct as the array's "blind administrator"—strongly supports the conclusion that the array "did not 'improperly single out" Hughes. *Id*. at *5 (quoting *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005)). Lieutenant Beavers did not select the photos to include in the array. He lacked any knowledge about the investigation or the potential suspects involved. The photo array was kept from his possession in a manilla envelope, and he did not see it until after he arrived at D.L.'s residence. He did not remove the photo array from the manila envelope and show it to D.L. until after he was in a room alone with her He had not met D.L. before arriving at her residence and administering the photo array to her. The written statement he read to D.L. reinforced the array's lack of suggestiveness and his neutrality by informing D.L., "This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. I do not who the suspect is." *Supra* note 4. These attributes—of Lieutenant Beavers' role as the photo array's blind administrator—effectively ensured the procedure used to present the array to D.L. was not tainted with suggestiveness. *Cf*.

10

*United States v. Holmes*, No.1:20-cr-58-2, 2021 WL 1821247, at *2 (S.D. Ohio, May 6, 2021) (Police use of a "blind administrator" helped show a photo array was not unduly suggestive); *cf. also United States v. Moore*, No. 1:19-CR-452-AT, 2022 WL 633565, at *2 n.2 (N.D. Ga. March 4, 2022) ("Blind administration is viewed in the field as best practice because it prevents the administrator of lineup from providing inadvertent or intentional verbal or nonverbal cues to the witness").

Examining the array itself, nothing suggestive arises from its inclusion of six photos arranged in two rows of three. *See Radaker-Carter*, 2025 WL 2399352, at *5 ("[A] six-photo lineup is not per se suggestive." (citing *United States v. Stamper*, 91 Fed. App'x 445, 460 (6th Cir. 2004); *Wingate v. United States*, 969 F.3d 251, 261 (6th Cir. 2020))). The Court has reviewed the array. The photos themselves show six African-American women, including Hughes, set against nearly identical light grey backgrounds with no significant distinction in Hughes's complexion, clothing, hair style, age, or general appearance compared to the other women. *See* Gov't. Hearing Exh. 1. Although Hughes alleges the photos were handpicked so she is the only person in the lineup with traits matching those described by D.L., Hughes does not identify any particular trait, or group of traits, in D.L.'s description that appear only in Hughes's photograph or otherwise set her photo apart from the other photos in the array. *See* Doc. No. 143 at PageID 1186-90. For these reasons, Hughes has not met her burden to show that the photo array improperly singled her out or was unduly suggestive. *Radaker-Carter*, 2025 WL 2399352, at **5-6 (quoting *Perry*, 565 U.S. at 238-39); *see United States v. Reamey*, 132 Fed. App'x 613, 616-17 (6th Cir. 2005) ("[B]ecause all six photos depicted men of the same race with similar builds, complexions, and hairstyles, it was unlikely that the differences in age, clothing, and facial expression led the witness there to pick the defendant's photo."); *United States v. Soto*, 124 Fed. App'x 956, 965 (6th Cir. 2005)

11

("Nothing in the array causes Soto to stand out in comparison with the other individuals"). This conclusion ends the required analysis of the photo array without the need to consider whether D.L's identification of Hughes "was nevertheless reliable." *Radaker-Carter*, 2025 WL 2399352, at *6; *see United States v. Washington*, 714 F.3d 962, 968 (6th Cir. 2013) ("Because the defendant failed to meet his burden to show that the photo array was unduly suggestive, an analysis of whether the identification was nonetheless reliable is unnecessary").[7]

### 3.
### Hughes's Statements

Turning to Hughes's motion to suppress her statements, she contends that officers failed to adequately warn her of her constitutional right when she was under a custodial interrogation, and statements she gave were not voluntarily given. Doc. No. 77 at PageID 211. Hughes's motion fails because she does not identify any particular statement she made to a law enforcement officer or otherwise identify circumstance. In addition, the Government states that to its "knowledge, none of the defendants were ever interviewed." Doc. No. 100 at PageID 332. Assuming this is true, Hughes has not shown she made a statement covered by *Miranda* or a statement that is potentially eligible for suppression under the Fifth, Sixth, or Fourteenth Amendments or any circumstance relevant to *Miranda*. *See* Doc. No. 77; *see also* Doc. No. 104.

Accordingly, Hughes's motion to suppress is **DENIED**.

### D. McGuire's Motion to Suppress

McGuire contends that the affidavits offered in support of the search warrant applications for 130 Laura Avenue, Apartment 1, and the two cellphones officers seized that were allegedly in

---

[7] Hughes may raise at trial her remaining contentions concerning the reliability of D.L.'s selection of Hughes's photograph from the array. *See Perry*, 565 U.S. at 233 ("When no improper law enforcement activity is involved…, it suffices to test reliability through … vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt").

12

his possession during the 130 Laura Avenue search, do not provide sufficient information to establish probable cause. Doc. No. 85 at Page ID 234-36. He reasons that the search warrant affidavits do not identify the confidential informant, describe the informant's criminal histories, or indicate he or she had ever provided independently corroborated information. *Id*. at PageID 234-35. He also maintains that the affidavits concerning cellphones were "so broad, and lacking in particularity, that they encouraged an impermissible, general exploration and rummaging that is not countenanced under the law." *Id*. at 235.

Upon careful review of McGuire's motion to suppress, and as discussed previously, *supra* § II(C)(1), Task Force Officer Orick's affidavit in support of the search warrant applications for 130 Laura Avenue, Apartment 1, and the two cellphones allegedly in McGuire's possession, set forth ample indicia of probable cause, *see* Doc. No. 100, Exh. 1 at PageID 856-873; Exh. 7 at PageID 1092-1166, are sufficiently particular as to the property to be searched at each address; demonstrate the required "probable cause nexus," *see Sanders*, 106 F.4th at 460-61, and are neither vague nor conclusory. Moreover, even if the Court were to now find the warrants lacking—which it does not—the officers executing the warrants relied in good faith on the search warrants at issue and, consequently, the good-faith exception applies and supports the denial of McGuire's motion to suppress. *See Leon*, 468 U.S. at 922-24; *cf. Merriweather*, 728 F. App'x at 506 ("[T]he affidavit offers several factual allegations that, even if insufficient in isolation and circumstantial in nature, render the officer's reliance on the warrant objectively reasonable").

Accordingly, McGuire's motion to suppress is **DENIED**.

### E.  R. Busbee's Motion to Suppress

Ricardo Busbee seeks an Order suppressing all evidence seized from storage units at Needmore Road and 130 Laura Avenue. Doc. No. 79 at PageID 215. He contends that probable

cause does not support the search warrants for storage units because the affidavit presented in support of the warrant fails to sufficiently indicate a nexus existed between the search locations and criminal activity and because the affidavit relies on information from individuals whose veracity and credibility were not established, and omitted facts material to the probable cause determination.  *Id*. at PageID 217.  He further maintains the canine search failed to provide probable cause to issue the search warrants because the affidavit submitted in support of the warrant applications lacked any information about the dog's training, certification, and reliability, or that of his handler.  *Id*.

Upon careful review of R. Busbee's motion to suppress, and as discussed previously, *supra* § II(C)(1), Task Force Officer Orick's affidavits in support of the search warrant applications for storage units 227 and 249 at 1830 Needmore Road, and the storage unit at 130 Laura Avenue,[8] set forth ample indicia of probable cause, *see* Doc. No. 100, Exh. 1 856-73; Exh. 2 at PageID 876-94; Exh. 3 at 900-21, are sufficiently particular as to the property to be searched at each address; demonstrate the required "probable cause nexus," *see Sanders*, 106 F.4th at 460-61, and are neither vague nor conclusory.  Moreover, even if the Court were to now find the warrants lacking—which it does not—the officers executing the warrants relied in good faith on the search warrants at issue and, consequently, the good-faith exception applies and supports the denial of McGuire's motion to suppress.  *See Leon*, 468 U.S. at 922-24; *cf. Merriweather*, 728 F. App'x at 506 ("[T]he affidavit offers several factual allegations that, even if insufficient in isolation and circumstantial in nature, render the officer's reliance on the warrant objectively reasonable").  Because R. Busbee has joined with the arguments raised, in T. Busbee's and Hughes's motions to suppress, the Court has

---

[8] The search warrant for 130 Laura Avenue, Apartment 1, was sufficiently specific about the search of storage units by authorizing officers to search "storage areas and outbuildings and/or parking garages associated with the particular apartment."  Doc. No. 100, Exh. 1 at PageID 857, 872.

14

considered those motions and their replies as applied to R. Busbee. However, the reasons provided above for finding no merit in T. Busbee's and Hughes's motions, *supra* §§ II(B) and (C)(1), (3), apply equally to R. Busbee. As a result, R. Busbee's adoption of those motions is unavailing.

Accordingly, R. Busbee's motion to suppress is **DENIED.**

### III. Conclusions

For the above reasons, R. Busbee's motion to adopt is **GRANTED**, and Defendants' motions to suppress are **DENIED**. The Court **CONFIRMS** the case is **SET** for a final pretrial conference on **January 6, 2026 at 2:00 p.m**.; and trial is **SET** for **January 20, 2026 at 9:30 a.m.**

**IT IS SO ORDERED.**

October 9, 2025                 s/*Michael J. Newman*
                                                       Hon. Michael J. Newman
                                                       United States District Judge